UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CORNELIUS POWELL, | ) |
| Petitioner, | ) |
| v. | ) No. 2:16-cv-00291-JMS-MPB |
| BRIAN SMITH, | ) |
| Respondent. | ) |

**Entry Denying Petition for Writ of Habeas Corpus
and Directing Entry of Final Judgment**

The petition of Cornelius Powell for a writ of habeas corpus challenges a prison disciplinary proceeding, REF 15-10-0002, in which he was found guilty of aiding and abetting the violation of a class A offense and possession or use of cellular device, Code A-111 and Code A-121 violations. For the reasons explained in this entry, Mr. Powell's habeas petition must be **denied.**

### I. Overview

Prisoners in Indiana custody may not be deprived of credit time, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004), or of credit-earning class, *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Jones v. Cross,* 637 F.3d 841, 845 (7th Cir. 2011); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000).

## II. The Disciplinary Proceeding

On October 1, 2015, Officer George Edmonds issued a Report of Conduct charging Mr. Powell with aiding and abetting the violation of a class A offense and possession or use of a cellular device in violation of Code A-111 and Code A-121. The Report of Conduct states:

> On 9/30/2015 approximately 7:41am, I officer George Edmonds witnessed resident Cornelius, Powell 910820 standing in a huddle with resident Ivory Hill 157982 who I Edmonds witnessed with a cell phone in his hand. Powell also was looking down at the cell phone as well as Ivory Hill, Myran, McKnight 894255, Eric McNeal 147483. I officer Edmonds order Powell to stand away from Hill as I search Hill, but Powell walked behind Hill and received a object [sic] from Hill's hand, then I Edmonds order[ed] Powell to stand to the other side and I Edmonds witnessed a black cell phone charger on the ground [where] both Hill and Powell were standing before I order[ed] Powell to move, then I Edmonds was distracted by Myran, McKnight by dropping a piece of paper, and witnessed Powell move quickly away again. And when I Edmonds searched the area [where] Powell had moved from I witnessed a black cell phone on a machine still on. I Edmonds confiscated cell phone and called Lt. Phearson.

Dkt. 11-1.

Mr. Powell was notified of the charge on October 1, 2015, when he was served with the Report of Conduct and the Notice of Disciplinary Hearing (Screening Report). Dkt. 11-2. The Screening Officer noted that Mr. Powell requested five witnesses, two of which were State Fair employees. *Id*. Mr. Powell's request for the State Fair employee witnesses was denied when they could not be identified and located. *Id*. Mr. Powell did not request any physical evidence or a lay advocate. *Id*. Mr. Powell's signature appears on the Notice of Disciplinary Hearing and Report of Conduct. Dkt. 11-1; dkt. 11-2.

Offender Eric McNeal provided a statement that said:

> I, Eric McNeal [sic] Mr. Powell on 9-30-15 with a cup of coffee standing talking to me, Mr. Hill, Mr. McKnight and some fair workers unsupervised waiting to work when Off. Edmonds ask [sic] if he could pat us down[.] Mr. Hill never passed Mr. Powell anything because Mr. Hills [sic] hands were in the air while being search[ed].

Dkt. 11-3.

> Offender McNight provided a statement that said:
>
> Powell never was not [sic] handed anything from Hill. Officer Edmonds was very serious about us not moving around. His tone of voice was loud and controlling. We all listened to his orders.

Dkt. 11-4.

> Offender Hill provided a witness statement that said:
>
> I Mr. Hill on the above date [and] time was standing with Mr. Powell [and] Mr. Edmonds approached us saying give me a phone. I stated I don't have anything and put my coffee down out my hand [and] then I approached Mr. Edmonds with my hands up in the air telling him I didn't have anything [and] then proceeded to pat me down [and] then told offender Powell to step to the side. There is no way possible he was handed anything because there was nothing to hand him. Then Mr. Edmonds proceeded to look around the work area [and] then upon searching he went into a black garbage bag and pulled out which was later [sic] to be a charger!! And then he said we all were going back to the facility. Everyone saw him get that charger out [sic] the black trash bag meaning us [and] the state fair workers!!

Dkt. 11-5.

The hearing officer conducted a disciplinary hearing on October 2, 2015. Dkt. 11-6. At the hearing, Mr. Powell stated that "I didn't touch a cell phone or a charger. Could this be dropped down to something less? I would like to do the IIIR [sic] program" *Id*. After considering the conduct report, offender statement, and witness statements, the hearing officer found Mr. Powell guilty of class A aiding and abetting with another to commit a class A offense and class A use or possession of a cellular device *Id*. The recommended and approved sanctions imposed included a written reprimand, loss of privileges, and 90 days of lost credit time. *Id*. The hearing officer imposed the sanctions because of the seriousness of the offense, the offender's attitude

and demeanor during the hearing, and the likelihood of the sanction having a corrective effect on the offender's future behavior. *Id*.

Mr. Powell's appeals were denied. This habeas action followed.

### III. Analysis

Mr. Powell argues that his due process rights were violated during the disciplinary proceeding. His claims are that: 1) he was denied advance written notice and was not adequately screened on the charge; 2) the phone and charger were not in evidence; 3) he was denied witnesses; and 4) there was insufficient evidence to find him guilty.

Mr. Powell first argues that his rights were violated when the "offense" and "code number" were left blank on the Report of Conduct when he was notified of the charges against him. He further contends he was inadequately screened and never signed the Notice of Disciplinary Hearing. Due process requires that an inmate be given advanced "written notice of the charges . . . in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (citations and quotation marks omitted).

The respondent argues that Mr. Powell did not include in his appeal any claim that the code number and offense were not included on the Report of Conduct when he was screened. This constitutes procedural default because the opportunity to raise such a claim has passed. Procedural default caused by failure to exhaust administrative review can be overcome if the petitioner shows cause and prejudice or shows that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Moffat v. Broyles,* 288 F.3d 978, 982 (7th Cir. 2002). Mr. Powell did not reply to the respondent's return

and has made no showing of cause and prejudice. *Barksdale v. Lane,* 957 F.2d 379, 385 (7th Cir. 1992) ("The Supreme Court has defined 'cause' as some external objective factor, such as interference by officials or unavailability of the factual or legal basis for a claim, which impeded compliance with the state's procedural rule."); *see also Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003) ("it is well established in this Circuit that circumstances such as youth, lack of education, and illiteracy are not external impediments within the context of excusing procedural default"). Accordingly, the claim that Mr. Powell was denied proper advance notice of the charge is procedurally defaulted.

Mr. Powell also failed to raise on appeal the issue that he never signed the Notice of Disciplinary Hearing. This claim is also procedurally defaulted. Moreover, the form, dkt. 11-2, does bear Mr. Powell's signature on the bottom so this claim fails on the merits as well. To the extent Mr. Powell points out that his identification number was incorrect on the Notice of Disciplinary Hearing, that error was corrected and no due process rights were violated in that regard.

Mr. Powell's next claim is that the phone and phone charger (or a photograph of them) were never presented as evidence during the hearing. He did not request this physical evidence before or during the hearing, however, so there is no due process error in this regard.

Mr. Powell also claims that he was denied statements from two non-inmate witnesses who supervised him when he was working at the Indiana State Fair. An inmate "facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff,* 418 U.S. at 566. The Notice of Disciplinary Hearing reflects that Mr. Powell's request for the two State Fair witnesses "Jerry" and "Wes" was denied because he

"can't give staff enough information to find these people. Unable to find State Fair staff by these names." Dkt. 11-2.

"Prison officials are granted significant discretion in responding to requests for witnesses because the minimal due process protections articulated in *Wolff* should not impose an undue burden on prison administrators, institutional safety, or correctional goals." *Calligan v. Wilson*, 362 Fed. Appx 543, 546 (7th Cir. 2009) (no due process error where prison officials were unable to identify an unnamed inmate and another inmate witness where the wrong identification number was used). When a prisoner challenges the denial of witnesses in a prison disciplinary proceeding, it is the prison official's burden to provide a "justification" for the denial. *Ponte v. Real*, 471 U.S. 491, 499 (1985); *see Wilson v. Davis*, 102 Fed. Appx. 37, 38 (7th Cir. 2004) ("The burden is on the state to offer a rational explanation for the denial of an inmate's request for witnesses."). Here, prison officials provided a reasonable explanation for their inability to find civilian witnesses based on the lack of information provided. There was no due process violation under these circumstances.

Mr. Powell's final claim challenges the sufficiency of the evidence. He asserts that there was evidence that he looked at a phone possessed by another inmate and that he refused to obey an order given by Officer Edmunds, but he argues that there was no evidence that he aided, used, or possessed a cell phone. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016). The "some evidence" evidentiary standard in this type of case is much more lenient than "beyond a reasonable doubt" or even "by a preponderance." *See Moffat,* 288 F.3d at 981 (hearing officer in prison disciplinary case "need not show culpability beyond a reasonable doubt or credit exculpatory evidence."); *McPherson v. McBride*, 188 F.3d 784, 786

(7th Cir. 1999) ("In reviewing a decision for 'some evidence,' courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.") (internal quotation omitted). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

The Indiana Department of Correction defines possession as "[o]n one's person, in one's quarters, in one's locker or under one's physical control." Indiana Department of Correction Policy and Administrative Procedure, III, BB, p. 5 (eff. June 1, 2015) (www.in.gov/idoc/files/02-04-101_The_Disciplinary_Code_for_Adult_Offenders___6-1-2015.pdf). "[O]ffenders are presumed to be responsible for any property, prohibited property or contraband that is located on their person, within their cell or within areas of their housing, work, educational or vocational assignment that are under their control. Areas under an offender's control include, but are not limited to: . . . the offender's desk, cabinet/locker, shelving, storage area, bed and bedding materials in his/her housing assignment and the desk, cubicle, work station and locker in his/her work, educational or vocational assignment." *Id.* The definition of "possession" thereby includes property that is within areas of an inmate's work assignment.

Here, the Court cannot reweigh the evidence. Although the statements provided by the other inmates who were present state that Mr. Powell did not receive anything from offender Hill, the hearing officer could reasonably find the Report of Conduct credible, wherein the reporting officer stated that he saw offender Hill with a cell phone in his hand, Mr. Powell was looking at the cell phone, Mr. Powell refused to obey the officer's order to stand away from Hill while Hill was searched, Mr. Powell took an object from Hill's hand, and Mr. Powell moved

quickly away when the officer was distracted by another inmate. Dkt. 11-1. Here, it was reasonable for the hearing officer to conclude that Mr. Powell was looking at the cell phone and thereby was aware of the cell phone and had access to the phone and charger where they were found. These facts support the guilty findings of aiding and possession of a cell phone and charger. Code A-111 and Code A-121. There was "some" evidence presented and therefore no due process violation occurred.

Mr. Powell was given proper notice and had an opportunity to defend the charge. The hearing officer provided a written statement of the reasons for the finding of guilt and described the evidence that was considered. There was sufficient evidence in the record to support the finding of guilt. Under these circumstances, there were no violations of Mr. Powell's due process rights.

### IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceedings. Accordingly, Mr. Powell's petition for a writ of habeas corpus must be **denied** and the action dismissed. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 10/13/2017

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

CORNELIUS POWELL
910620
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy 40
Greencastle, IN 46135

Abigail T. Rom
OFFICE OF THE ATTORNEY GENERAL
abby.rom@atg.in.gov